# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 1, 2002

## STATE OF TENNESSEE v. JEROME F. SAWYERS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-C-2175     Walter Kurtz, Judge**

---

**No. M2001-02878-CCA-R3-CD - Filed December 3, 2002**

---

The defendant, Jerome F. Sawyers, pled guilty on July 16, 2001, to possession of cocaine less than .5 grams for resale and  felony possession of a firearm and was sentenced, respectively, to six years and two years as a Range I, standard offender, with both sentences to be served concurrently.  A violation of probation warrant was issued on August 8, 2001, alleging that he had violated probation by being in possession of a weapon and failing to report to his probation officer as ordered. Following a hearing, the trial court revoked the defendant's probation; and he timely appealed, arguing that the proof was insufficient that he had violated the terms of his probation.  We conclude that the evidence supports the revocation of probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

Justin Johnson, Nashville, Tennessee, for the appellant, Jerome F. Sawyers.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the probation revocation hearing, William Coughlin testified that he had prepared and filed the probation violation warrant alleging that the defendant had violated the terms of his probation.  He said that the defendant had not reported to him since being placed on probation and, reportedly, had been in possession of a weapon in violation of the probation order. Detective David Scott Wilder, of the Nashville Metropolitan Police Department K-9 Squad, said that on July 28, 2001, he had investigated a shooting in which the defendant was the victim.  He had been asked to bring his dog to search the area where the defendant had been located, "roughly about half-a-mile, quarter of a mile" from the crime scene.  At the second location, he found a "Smith & Wesson, 40

caliber, semi-automatic pistol," which had blood on it. A purple Cadillac, with several bullet holes, had rolled or crashed into a barrier at the crime scene. Several brass shell casings were found nearby, and there was blood in the Cadillac. A trail of blood began at the Cadillac and "went towards" the area where the pistol was found. The brass shell casings were of different calibers but some were .40 caliber, as was the pistol that was found twenty to thirty feet from where emergency personnel had found the defendant.

Ray Crumby, Jr., a detective with the Metro Homicide Unit, said that he had investigated the shooting of the defendant and that shell casings from different weapons were found at the crime scene. He assumed the defendant's car had crashed into a gate restricting access to the apartment complex where the shooting occurred. Because of shell casings "right by the door" of the defendant's car, Crumby believed that the defendant had "returned fire." Blood was in the defendant's car, .40 caliber shell casings were found by his car, and nine-millimeter shell casings were found nearby. Beside one of the buildings in the apartment complex, "maybe, 75 yards away from" the defendant's car, was a "large amount" of shell casings from a "high powered assault-type rifle." Crumby said that he had spoken several times with the defendant, who said that "he believed he was set up." The defendant explained to Crumby what had occurred:

> When he went over to visit a friend that lived in the complex, as soon as she got out of the car, a white car pulled up on him, he had to drive around the white car, different people jumped out and started shooting at him from different angles, that's when he was trying to escape, and he rammed the purple Cadillac into the barrier.
>
> And as he was in the Cadillac, a gentlemen [sic] came up to him with a pump shot gun or a sawed off shot gun, shot him in the face. And then, [the defendant] was able to flee the Cadillac and run away.

The defendant had said that, after being shot, he fled toward "Clarksville Highway," where he had been picked up by an ambulance. Crumby said he knew the defendant had a gun and told him so. In response, the defendant "didn't say anything, he just paused." The defendant did not say that anyone else had been shot. At first, the defendant was cooperative with Crumby, but, upon his release from the hospital, he "said he'd take care of it, or he said he didn't want to prosecute."

## ANALYSIS

The authority of the trial court to revoke a suspended sentence is set out in Tennessee Code Annotated section 40-35-311(e) establishing that the preponderance of the evidence standard is utilized to determine whether the violation has been proven:

> If the trial judge should find that the defendant has violated the conditions of probation and suspension by a preponderance of the

evidence, the trial judge shall have the right by order duly entered upon the minutes of the court, to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310; provided, that in case of such revocation of probation and suspension, the defendant has the right to appeal.

Tenn. Code Ann. § 40-35-311(e) (Supp. 2001).

The function of the appellate court reviewing the revocation of a suspended sentence was explained in State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991):

> We take note that a trial judge may revoke a sentence of probation or a suspended sentence upon a finding that the defendant has violated the conditions of his probation or suspended sentence by a preponderance of the evidence. T.C.A. § 40-35-311. The judgment of the trial court in this regard will not be disturbed on appeal unless it appears that there has been an abuse of discretion. State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Cr. App. 1981). In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment. State v. Milton, 673 S.W.2d 555, 557 (Tenn. Cr. App. 1984).

Following the presentation of proof at the revocation hearing, the trial court explained its basis for revoking the defendant's suspended sentences:

> Well, has the State proved that he was in possession of the weapon beyond a reasonable doubt? The answer is no. But has the State sustained that by the burden it has, which is a preponderance of the evidence? And the answer is yes. It's more likely than not that [the defendant] was in possession of this weapon.
>
> The weapon was found 20 or 30 feet from him, 700 yards away from where the incident took place, it had blood on it, the shell casings outside the car all corroborate the State's theory. And the admission by silence testified to is further corroboration.

-3-

So the State has carried its burden under 40-35-311(e) of showing the violation here. He was in possession of this firearm. It's the judgment of the Court that the previously suspended sentence – well, the revocation warrant is sustained. The suspended sentence is placed in effect in its totality.

## CONCLUSION

We conclude that the record abundantly supports the finding of the trial court that, by a preponderance of the evidence, the State proved that the defendant violated the terms of his probation by possessing a pistol. Accordingly, the order revoking the defendant's probation is affirmed.

_____
ALAN E. GLENN, JUDGE

-4-