# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 20, 2008 Session

## STATE OF TENNESSEE v. CHARLES HOPSON STEWART

**Appeal from the Circuit Court for Warren County**
**No. F-11090     Larry B. Stanley, Jr., Judge**

---

**No. M2008-00474-CCA-R3-CD - Filed October 6, 2008**

---

The defendant, Charles Hopson Stewart, was convicted on his guilty pleas of four counts of possession of cocaine with intent to deliver, a Class B felony. He was sentenced to nine years for each offense, to be served on split confinement of thirty days of jail on the weekends and probation, with the sentences imposed concurrently. His probation was revoked, and the court also denied a motion to modify his sentence. On appeal, the defendant contends: (1) that the trial court erred in allowing the drug court team to determine whether his probation should be revoked and what consequence should follow the revocation, (2) alternatively, that the decision of the drug court team that the defendant should serve his sentence in confinement was too harsh given the facts and circumstances of the case, and (3) that the trial judge should be disqualified from presiding on remand. We reverse the judgment of the trial court and remand for a new revocation hearing, at which another judge shall preside.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed, Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

David L. Raybin and Sarah S. Richter, Nashville, Tennessee (on appeal), and Robert W. Newman, McMinnville, Tennessee (at trial), for the appellant, Charles Hopson Stewart.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Lisa Zavogiannis, District Attorney General; and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was placed in the drug court program as a condition of his sentences. Although the transcript of the sentencing hearing is not included in the appellate record, the judgments filed on November 20, 2007, indicate that the sentences were imposed on October 10,

2007. The defendant served the jail portion of his split confinement sentence beginning October 12, 2007, and was released on November 10, 2007. There is no revocation warrant in the record, but we infer from facts recited in a trial court order that the defendant was charged with having violated the terms of his probation because he was charged with the offense of stalking on January 24, 2008, failed to obtain full-time employment, and had not been truthful with the drug court coordinator about his whereabouts on January 24, 2008.

The court conducted a revocation hearing on February 1, 2008. At the hearing, the court questioned Brad Price and "Mr. Martin" under oath. Mr. Price informed the court that he met with the defendant at the drug court office on January 24 for the defendant's weekly appointment. Mr. Price stated that at the conclusion of the appointment, he asked the defendant where he was going and that the defendant stated he was going to work at Stewart's Nursery. Mr. Price said that after the defendant left the office, he received a call from Mr. Martin in which he learned that the defendant was at the middle school, not Stewart's Nursery. Mr. Martin informed the court that he received a call from a state's witness in the conviction proceedings who said he was being followed by the defendant. Mr. Martin said he learned of the person's and the defendant's location, stopped on the side of the road, waited until they passed him, and followed them approximately one and one-half miles to the middle school parking lot. Mr. Martin said he had information that this was not the first time the defendant had followed the witness.

The defendant testified at the hearing that he had not used drugs since April 23, 2007. He said he had participated in a twenty-day inpatient program and had graduated from the aftercare program. He said he was presently involved in alcohol and drug classes three days per week and had always passed the drug screenings that had been administered to him in the drug court program. He said he had been performing the required community service. The defendant said that he had been working at his father's nursery but that he had been unable to find another job, despite having made contacts with several businesses. He said he had been "everywhere" looking for a job and had provided Mr. Price with documentation of his efforts.

The defendant testified that he made a poor decision in following the man who had been a state's witness in his case. He said Mr. Price allowed him to "get a bite to eat" before going to work and that as he was leaving a fast food restaurant, he saw the man and turned around. He said he had no legitimate reason for doing so but that he did not speak to the man. He denied that he had followed the person on any other occasion.

The defense attempted to call other witnesses to testify about the defendant's progress in his drug rehabilitation and the drug court program. However, the trial court ruled that the witnesses' testimony was unnecessary to its decision. The court found that the defendant had violated the terms of probation and revoked his probation.

On February 11, 2008, the defendant filed a motion to modify his sentence pursuant to Tennessee Rule of Criminal Procedure 35, and the court conducted a hearing on February 26. According to its order, the court treated this hearing both as one to allow further evidence from the

previous revocation hearing and as one for sentence modification under Rule 35. The court allowed the defendant to present the witnesses it had previously declined to hear. Numerous family members and friends testified about the defendant's remarkable progress in drug rehabilitation, his efforts to find a job in the face of physical limitations, his good character, and their support for him. At the conclusion of the hearing, the court asked members of the drug court team who had been present during the hearing to deliberate and submit a written recommendation to the court at a later date. The court entered an order on February 28 stating that the drug court team "met without [the trial court] and later presented their recommendation to the Court." The team recommended that the defendant "be terminated from the Drug Court Program to serve his original sentence." The court "affirm[ed] the ruling of the team." Thus, the court terminated the defendant from the program and denied the Rule 35 motion. This appeal ensued.

## I

The defendant claims that the trial court erred by delegating to the drug court team the decision whether the defendant's probation should be revoked and what sentence should be imposed upon revocation. The state argues that the court properly exercised its discretion because it retained the final decision-making authority.

We note that although the defendant's notice of appeal stated that it was an appeal from the February 1 and February 28 orders of the trial court, the defendant's brief does not attack the trial court's initial revocation at the February 1 hearing. His challenge is to the February 26 proceedings. However, we first must determine the nature of those proceedings. The defendant's motion which precipitated that hearing was captioned "Motion to Modify Sentence" and asked for modification of the sentence that was imposed following the revocation. The motion recited that there were witnesses who the defense was not allowed to call at the previous hearing who were prepared to testify about the positive impact of the drug court program on the defendant. The court stated at the hearing

> . . . [Defense counsel], after I revoked [the defendant's] sentence, asked me to consider hearing from family and friends. I decided to do that. I felt like with the seriousness of the offense that it was improper for me to exclude them from saying whatever they wanted to say. . . . [At the February 1 hearing] I did not let the family or anyone else testify unless they had something to say specifically about the incident that occurred. When [defense counsel] asked me to reconsider in letting these people testify, I thought it only fair to do so, and to give consideration to the Drug Court team because your opinion is valued by me. What I want you to do is by the end of business on Thursday, I would like a written recommendation from the other members of the Drug Court team. I am not going to participate in that. I have no thoughts or opinions on what you should do, should you decide that [the defendant] should come back with no

-3-

> sanctions whatsoever, or if he should be revoked and dismissed from
> the program or anything between, I do not care what your opinion is.
> I trust your judgment.

In its February 28 order, the court stated that the drug court team had met outside the presence of the court and had recommended that the defendant be terminated from the program and serve his original sentence. The court ruled, "This court affirms the recommendation of the team. The Defendant is terminated from the Drug Court Program and the Defendant's motion under Tennessee Rules of Criminal Procedure Rule 35 is denied." Having considered these facts, we believe the trial court did not limit itself to the parameters of Rule 35 regarding modification of a previously imposed sentence. Rather, we believe the trial court reopened for a new determination the issue of whether the defendant's probation should be revoked and the proper consequence for a revocation.

We now turn to the defendant's contention that the trial court erred in allowing the drug court team to make the decision regarding revocation and sentencing. Tennessee Code Annotated section 40-35-311 vests in "the trial judge granting the probation and suspension of sentence, the trial judge's successor, or any judge of equal jurisdiction who is requested by the granting trial judge to do so" the authority to revoke probation and determine the proper consequence following a revocation. T.C.A. § 40-35-311. These decisions are within the discretion of the trial court. See State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981) (holding that reversal on appeal occurs upon showing of abuse of discretion).

Further, in Gagnon v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1761 (1973), the United States Supreme Court held that a probationer is entitled to due process when a state attempts to remove his probationary status and have him incarcerated. Gagnon, 411 U.S. at 785-86, 93 S. Ct. at 1761-62. A probationer's due process rights include:

(1)     written notice of the claimed violations of probation;
(2)     disclosure to the probationer of evidence against him or her;
(3)     opportunity to be heard in person and to present witnesses and documentary evidence;
(4)     the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation;
(5)     a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
(6)     a written statement by the fact finders as to the evidence relied on and reasons for revoking probation.

Gagnon, 411 U.S. at 786, 93 S. Ct. 1761-62; Practy v. State, 525 S.W.2d 677, 680 (Tenn. Crim. App. 1974).

In Tennessee, the "neutral and detached hearing body" is statutorily prescribed to be the trial judge. The statute does not give the trial judge the authority to consult outside entities or persons in making its determination or to delegate the decision-making authority to another entity or person, other than another trial judge. Based upon the statute, we hold that the trial judge violated the defendant's due process protections in allowing the drug court team to deliberate and make a recommendation to the court about the disposition of a matter that was statutorily vested in the trial judge's authority. Further, the record in this case reflects that the trial judge not only received the recommendation from the drug court team, it delegated the decision-making authority to the team. In this regard, it is telling that the trial judge instructed the drug court team at the hearing, "I have no thoughts or opinions on what you should do, should you decide that [the defendant] should come back with no sanctions whatsoever, or if he should be revoked and dismissed from the program or anything between, I do not care what your opinion is. I trust your judgment." Thereafter, the judge's order stated that he "affirms the recommendation of the team." Neither the transcript of the hearing nor the order reflect that the trial judge engaged in its own deliberation of the proper disposition of the case. The procedure followed in this case was outside the statutory procedure and authority of the judge and deprived the defendant of due process. We hold that the defendant is entitled to a new hearing.

## II

In the alternative to his first issue, the defendant contends that the sentence imposed by the drug court team members was grossly disproportionate to the offense alleged. The problem with this issue is that we are asked to review ultra vires determinations by a drug court team. Such is not our obligation, and we will not do so.

## III

Finally, the defendant argues that a new judge should conduct the proceedings on remand. The state has chosen not to address the merits of the defendant's argument.

The Code of Judicial Conduct requires that judges refrain from "ex parte communications, or other communications made to the judge outside the presence of the parties concerning a pending . . . proceeding[.]" Tenn. R. Sup. Ct. 10, Code of Judicial Conduct, Canon 3.B.(7). The Code also requires disqualification of a judge "in a proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. R. Sup. Ct. 10, Code of Judicial Conduct, Canon 3.E.(1).

In the present case, the trial judge received communication outside the presence of the parties concerning the matter and relied on that communication in disposing of the defendant's case. We conclude that on remand the case shall be assigned to another judge.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is reversed. The case is remanded for a revocation hearing before another judge.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE